IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DIRECT PROCESSING SOLUTIONS, LLC | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:12-CV-01073-P |
| | § | |
| PAYCHEX, INC | § | |
| | § | |
| Defendant. | § | |

## PLAINTIFF'S FIRST AMENDED COMPLAINT

COMES NOW, Plaintiff Direct Processing Solutions, LLC and files its First Amended Complaint against Defendant Paychex, Inc., and in support thereof respectfully states the following:

## INTRODUCTION

1.      Plaintiff Direct Processing Solutions, LLC ("DPS" or "Plaintiff") retained Defendant Paychex, Inc. ("Paychex" or "Defendant") to handle DPS's payroll and employment-related tax services.  Paychex markets itself as the "One Source Solution" and "The Answer to Payroll Frustration." Unfortunately for DPS, Paychex failed to adequately provide those services. Not only did this cause DPS extreme frustration, but worse, DPS incurred substantial costs due to Defendant's deception and poor performance.  Defendant's failure to provide the promised services and deceptive trade practices are clear violations of Texas law, and DPS is entitled to relief.

## PARTIES

2.      Plaintiff Direct Processing Solutions, LLC is a Texas limited liability company with its principal place of business located at 7703 North Lamar Boulevard, Austin, TX 75752.

3.      Defendant is a Delaware corporation.  Defendant may be served with process through its Registered Agent, C T Corporation System, at 350 N. St. Paul St. Suite 2900, Dallas, Texas 75201.

## JURISDICTION AND VENUE

4.      This case was originally filed in state court in Dallas County, Texas.  On April 5, 2012, Defendant removed the case to this Court on the basis of diversity jurisdiction, 28 U.S.C. § 1332.  Plaintiff consents to this Court's jurisdiction pursuant to 28 U.S.C. § 1332, and pursuant to applicable principles of supplemental jurisdiction under 28 U.S.C. § 1367.

5.      Venue is proper in this district pursuant to pursuant to the general venue statute, 28 U.S.C. § 1391, because the Western District of Texas is the judicial district in which Paychex "resides" and its contacts in the Northern District are sufficient to subject Defendant to personal jurisdiction.

## FACTUAL BACKGROUND

6.      DPS is a small Texas business that provides its customers with credit card processing services.

7.      Paychex is a national corporation providing payroll and accounting services. Paychex is traded on the New York Stock Exchange and maintains offices across the country. Paychex markets itself as "the One Source Solution."  Paychex's website is full of self-promotion, affirmatively asserting how Paychex can save businesses money and alleviate the

frustration of a business's payroll and accounting needs.  Paychex says it has dedicated, one-on-one client services, and experienced providers with "proven reliability."

8.      In February 2010, a representative of Paychex, Lisa Spates, met with DPS to solicit DPS's business.  Ms. Spates reviewed and offered DPS the all-inclusive package (the "Full Tax Suite") for taxes and payroll, and discussed Paychex services regarding direct deposit, billing, state unemployment insurance, workers' compensation insurance, and related services.

9.      Ms. Spates represented and promised to DPS that Paychex could handle all DPS's needs, and that Paychex was the best in the business.  Ms. Spates represented and promised that Paychex could manage all aspects of DPS's payroll, and indicated that Paychex provides this service for thousands of businesses.  Ms. Spates said that all DPS had to worry about was how much to pay DPS's employees, and Paychex would handle the rest.

10.     DPS then received a proposal for Services from Paychex.  In the proposal, Paychex reviews the many services it promised to provide to DPS, including submitting "accurate and complete quarterly and annual returns," "accurate and timely payroll tax deposits and returns," federal and state tax and employment forms, detailed earning and payroll reports, and other services.

11.     Based on Paychex's representations, promises, and the Proposal, DPS agreed to execute a contract with Paychex for the Full Tax Suite and the all-inclusive package Ms. Spate pitched to DPS.

12.     DPS subsequently began paying Paychex, and processing its payroll through Paychex.  DPS relied on Paychex to perform all the services it promised it would provide in Paychex's all-inclusive package.  Based on the proposal provided by Ms. Spates and assurances by Paychex, DPS believed:

    a.  Paychex was managing the forms and funds required for DPS's participation in the Texas workers' compensation program;

    b.  Paychex was managing payments and appropriate forms necessary for Texas state unemployment insurance;

    c.  Paychex was managing the forms and deposits required under Internal Revenue Code 941.

13.    On April 5, 2011, DPS discovered that it had been deceived by Paychex. DPS received a certified letter from the Internal Revenue Service notifying DPS it failed to properly account for and report IRS 941 tax payments for the Second and Third Quarters of 2010. After approximately two hours on the phone with the IRS, DPS determined that Paychex had not provided the expected services. DPS immediately made payment to the IRS in the hope it would avoid further penalties and interest.

14.    DPS then began reviewing records and documents to determine what had transpired. DPS learned that it never received a copy of the contract with Paychex. Despite this, DPS confirmed that Paychex billed DPS for the all-inclusive, Full Tax Suite option.

15.    Over the next few days, DPS spent many hours reviewing available documents and attempting to contact Paychex in order to remedy the problems. On April 8, 2011, a representative from Paychex informed DPS that Paychex was gathering all of the necessary information in order to help DPS resolve the issues Paychex caused. Later that day, Susan Carrol contacted DPS stating that she was in contact with Paychex's operations manager and working with the IRS to resolve the issues.

16.    Several days passed without any further communication from Paychex. Paychex would not return DPS's phone calls. Frustrated by Paychex's complete lack of response, DPS's principals traveled to Paychex's offices to obtain a copy of its contract and the records it would

need to correct the IRS issues.  Paychex turned DPS away, saying the relevant documents and records were not kept at that Paychex location.

17.     Over the next several weeks and months, DPS would travel to the Paychex office approximately six times in attempts to obtain DPS's own records—records Paychex had been paid to maintain accurately and file correctly with the proper state and federal agencies.

18.     Adding insult to injury, Paychex would not turn over some of the records DPS needed without DPS providing Paychex a $50 money order.  Thus, DPS was forced to leave the Paychex office, obtain a money order from a local convenience store, and then return to Paychex's office in order to recover DPS's own payroll/tax documents.  Even after this, DPS later realized it still has not provided all of the records necessary to clean up the Paychex mess. Upon returning, once more, to Paychex's office, Paychex disrespectfully required yet another $50 money order to turn over the documents.

19.     The Paychex issues forced DPS to enlist its accountant and retain a tax attorney to assist in remedying the issues—exactly what DPS had hired Paychex to do.

20.     Oddly, and as if nothing had transpired, Paychex provided, or at least attempted to provide, the Full Tax Suite services for the Fourth Quarter of 2011—an implied admission that Paychex should have been providing these services all along.

21.     To date, and despite numerous requests, Paychex has not provided DPS with a copy of its contract, has failed to assist DPS in correcting the issues, and has refused to provide all of the DPS's payroll records that DPS paid Paychex to maintain.  In fact, DPS is still dealing with the problems caused by Paychex, and recently received yet another visit from an IRS officer on April 12, 2012.

22.     DPS was forced to spend, and continues to spend, substantial time and great costs to remedy Paychex's mistakes and incomplete reports that Paychex was obligated to accurately complete and responsibly file.

23.     Due to Paychex's inadequate performance, inaccurate reporting, and deceptive representations, DPS has suffered and continues to suffer damages.  DPS has collectively spent hundreds of hours remedying these issues, in addition to the substantial out-of-pocket costs.  DPS seeks the recovery of its actual damages, consequential damages, reasonable and necessary attorneys' fees, court costs, interest, and special/exemplary damages.

## CONDITIONS PRECEDENT

24.     All conditions precedent have been performed, have occurred, or have been waived.

## CAUSES OF ACTION

### A.     *Violations of the Texas Deceptive Trade Practices Act*

25.     Plaintiff adopts and incorporates the foregoing paragraphs by reference.

26.     DPS is a consumer covered by the Texas Deceptive Trade Practices Act ("DTPA").  That is, DPS is a company that sought or acquired goods or services, by purchase or lease, and does not have assets of $25 million or more.  Paychex is a "person" under the DTPA.

27.     Defendant's actions were false, misleading, or deceptive acts or practices under the DTPA's "laundry list," including but not limited to:

    a.    representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;

    b.    representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities they do not have;

    c.    failing to disclose information concerning goods and services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction which the consumer would not have entered had the information been disclosed;

      d.      causing confusion or misunderstanding about the source, sponsorship, approval, or certification of goods or services; and/or

      e.      representing that an agreement confers or involves rights, remedies or obligations that it does not, or that are prohibited by law.

28.     Such violations were committed knowingly and intentionally. DPS provided written notice of its claims, and is further providing notice of its claims under the DTPA contemporaneously with the filing of this action. DPS detrimentally relied upon the above-described representations made by Defendants, and such representations were a producing cause of damages to DPS. Further, as a result of Defendant's violations of the DTPA, DPS has suffered and will continue to suffer harm, and is entitled to actual, consequential, and special damages as well as statutory penalties, interest, court costs, and reasonable and necessary attorneys' fees.

**B.**    *Negligent Misrepresentation*

29.     Plaintiff adopts and incorporates the foregoing paragraphs by reference.

30.     As discussed above, Defendant made actionable representations regarding the services it would provide. Defendant represented that it was responsibly providing payroll and tax services, but it has become painfully clear that Paychex was not. Once DPS received notice from the IRS, Defendant represented that it would resolve the IRS issues.

31.     Throughout the course of these representations, Defendant negligently provided false information that DPS used in its decision about whether to retain and continue using Paychex for its payroll and tax services. Defendant did not exercise reasonable care or competence in obtaining or communicating this information.

32.     DPS suffered pecuniary loss by justifiably relying on the information that Defendant provided. As a result of Defendant's negligent misrepresentations, DPS has suffered and will continue to suffer harm, and is entitled to actual, consequential, and special damages.

C.      *Promissory Estoppel*

33.     Plaintiff adopts and incorporates the foregoing paragraphs by reference.

34.     Defendant made promises to DPS regarding the services it would perform and was performing.  Defendant could foresee that DPS would rely on Defendant's promises when it made them.  DPS reasonably and justifiably relied upon Defendant's promises to its substantial detriment.  As a result, DPS has suffered and will continue to suffer harm, and is entitled to actual, consequential, and special damages.  Injustice can be avoided only through this Court's enforcement of Defendant's promises to DPS.

D.      *Unjust Enrichment*

35.     Plaintiff adopts and incorporates the foregoing paragraphs by reference.

36.     Defendant has been unjustly enriched as described above.  Defendant received the benefit of DPS's payments for services Paychex was supposed to provide.  It is unjust for Defendant to retain such benefits from DPS.  DPS seeks equitable relief from this Court to remedy Defendant's unjust enrichment.

E.      *Breach of Contract*

37.     Plaintiff incorporates the foregoing paragraphs by reference.

38.     In the alternative, DPS and Paychex entered into an agreement to provide payroll and tax services, although Paychex has not provided DPS a copy of said contract.  Defendant breached its contractual obligations to DPS.  As a result of this breach, DPS has suffered, and will continue to suffer, harm, and is entitled to actual and consequential damages, plus recoverable interest, court costs, and its reasonable and necessary attorney's fees.

## ATTORNEYS' FEES

39.     Plaintiff adopts and incorporates the foregoing paragraphs by reference.

40.     Due to Defendant's actions, DPS previously retained counsel to assist in remedying the payroll and tax problems caused by Paychex, and has been forced to retain undersigned counsel to bring suit.   DPS requests and is entitled to recover costs and their reasonable and necessary attorneys' fees under Section 17.50 of the Texas Business and Commerce Code for Defendants' deceptive practices, and Chapter 38 of the Texas Civil Practice and Remedies Code.

## DIRECT, CONSEQUENTIAL, AND EXEMPLARY DAMAGES

41.     Plaintiff adopts and incorporates the foregoing paragraphs by reference.

42.     As a result of the conduct by Defendant as described above, Plaintiff seeks recovery of all actual and consequential damages.   Furthermore, Plaintiff seeks to recover exemplary and/or punitive damages for Defendant's wrongful conduct that was made intentionally, maliciously, and/or knowingly with conscious disregard of Plaintiff's rights and interests.

## JURY DEMAND

43.     Plaintiff requests a trial by jury.

## PRAYER

WHEREFORE, Plaintiff Direct Processing Solutions, LLC respectfully requests that the Court enter a judgment against Defendant Paychex, Inc. for Plaintiff's damages, plus reasonable attorneys' fees, exemplary and/or punitive damages, prejudgment and postjudgment interest at the highest rates allowed by law, and such other and further relief, in law and in equity, to which Plaintiff may be justly entitled.

Respectfully submitted,

**GRUBER HURST JOHANSEN HAIL SHANK LLP**

*/s/ David F. Wishnew*
Mark Shank
  State Bar No. 18090800
David F. Wishnew
  State Bar No. 24052039

1445 Ross Avenue, Suite 2500
Dallas, Texas  75202
Telephone: 214-855-6800
Telecopier: 214-855-6808

**ATTORNEYS FOR PLAINTIFF DIRECT
PROCESSING SOLUTIONS, LLC**

## CERTIFICATE OF SERVICE

I hereby certify that on the 19th day of April, 2012, a true and correct copy of the foregoing document was served on the following counsel of record via e-filing with this Court's CM/ECF system in accordance with this Court's Local Rules and CM/ECF Procedures:

Christopher B. Trowbridge, Esq.
Bell Nunnally & Martin LLP
3232 McKinney Avenue, Suite 1400
Dallas, Texas 75204-2429

*/s/ David F. Wishnew*
David F. Wishnew